UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION H-07-513-1 |
| | § | |
| RHONDA FLEMING *in custody* | § | |

### ORDER

Pending before the court are defendant Rhonda Fleming's motions to dismiss the indictment on various grounds. Dkts. 202, 204. Upon review of the motions, the responses and the applicable law, the motions are DENIED.

### BACKGROUND

On September 7, 1995 in the United States District Court for the Eastern District of Arkansas, Rhonda Fleming pled guilty to a one count information for a violation of 18 U.S.C. § 1029 for fraud and related activity in connection with access devices. *See United States v. Fleming*, No. 4-CR-502, at Dkt. 1 (S.D. Tex) (related revocation proceeding). On December 19 1995, the Arkansas court sentenced Fleming to 21 months imprisonment followed by 3 years of supervised release, and a $50,000 special assessment. *Id.*

Jurisdiction over the case was transferred to the Southern District of Texas on November 10, 2004. And on February 9, 2005, the United States Probation Office petitioned for a warrant for an offender under supervision alleging that Fleming had violated the terms of her supervised release in several particulars. 4-CR-502 Dkt. 3. Among the violations alleged by the probation office was Fleming's alleged participation in the fraud that is the subject of the case at bar. *Id.* One of the conditions of Fleming's supervised release was that she not commit another federal, state, or local crime. *Id.* On March 7, 2005 after a three day revocation hearing during which the United States

adduced evidence of *inter alia* the acts in the case at bar, the court entered a judgment finding Fleming guilty of every violation of which she was accused. *Id.* at 21. Her supervised release was revoked and she returned to prison.

On December 13, 2007, the grand jury returned a 67 count criminal indictment against Fleming and five other defendants for conspiracy, health care fraud, wire fraud, and money laundering in this case. Dkt. 1. That same day the Southern District of Texas issued a warrant for Fleming's arrest. Dkt. 8. On December 18, 2007, Fleming was arrested and made her initial appearance in the Northern District of Texas. Dkt. 35. On December 20, 2007 Fleming was ordered detained and transferred to the Southern District of Texas for trial in the case at bar. *Id.*

## ANALYSIS

Fleming now moves pro se for the court to dismiss the indictment on several different grounds.

**1.   Failure to Indict Within the Requirements of the Speedy Trial Act, 18 U.S.C. § 3161(b).**

Fleming first moves the court to dismiss the indictment because the government failed to indict her within 30 days of her arrest in violation of § 3161(b). Section 3161(b) reads in relevant part:

> Any information or indictment charging an individual with the commission of an offense shall be filed within thirty days from the date on which such individual was arrested or served with a summons in connection with such charges.

§ 3161(b). In the instant case, Fleming was indicted before she was arrested and detained. Therefore, this section of the Speedy Trial Act does not apply to her.

Fleming appears to argue that since the events that led to the revocation of her supervised release are the same facts that are alleged in this indictment, her revocation proceeding triggered the

30 day time period. However, the revocation of her supervised release was a separate violation from the medicare fraud. Like an escaped prisoner whose recapture does not trigger the 30 day period for his indictment on separate escape charges, Fleming's revocation hearing did not subject her to restraint based on new charges. *United States v. Zukowski*, 851 F.2d 174, 177 (7th Cir. 1988) (citing *United States v. Sairafi*, 801 F.2d 691, 692 (4th Cir. 1986)). Instead, she was "subject to apprehension and confinement as a result of [her] original conviction." *Id.*; *accord United States v. Gardner*, 248 Fed. Appx. 605, 607 (5th Cir. 2007) (unpublished table disposition); *United States v. Stead*, 745 F.2d 1170, 1172–73 (8th Cir. 1984). In a similar case, the Ninth Circuit has held that "if a defendant's bail or bond is revoked on account of acts that later form the basis of an indictment, the Speedy Trial Act is not implicated by the defendant's arrest and return to detention." *United States v. Hoslett*, 998 F.2d 648, 653 (9th Cir. 1993) (citing *Acha v. United States*, 910 F.2d 28, 30–31 (1st Cir.1990); *United States v. Ray*, 768 F.2d 991, 996–97 (8th Cir.1985)). Accordingly, the court finds that the revocation proceedings did not trigger § 3161(b).

**2.    Abuse of the Grand Jury and Prosecutorial Misconduct**

Second, Fleming argues that the indictment must be dismissed because the prosecutors allegedly presented perjured testimony to the grand jury.[1] "The grand jury proceeding is accorded a presumption of regularity, which generally may be dispelled only upon particularized proof of irregularities in the grand jury process." *United States v. Mechanik*, 475 U.S. 66, 75, 106 S. Ct. 938 (1986). In order to merit dismissal of the indictment, either (1) the errors must compromise "the structural protections of the grand jury [so] as to render the proceedings fundamentally unfair,

---

[1] This argument is the basis of both one section of Fleming's first motion to dismiss (Dkt. 202) and her subsequent motion to dismiss (Dkt. 204). The court will address both motions in this section.

allowing the presumption of prejudice," or (2) the violation must have substantially influenced the grand jury's decision to indict. *Bank of Nova Scotia v. United States*, 487 U.S. 250, 256–57, 108 S. Ct. 2369 (1988) (citing *Mechanik*, 475 U.S. at 78; *Rose v. Clark*, 478 U.S. 570, 577–78, 106 S. Ct. 3101 (1986)).

The Court has held that errors such as those alleged by Fleming are to be reviewed under the harmless error standard. *Id.* at 71–72; *see also United States v. Agu*, 245 F.3d 791, 2000 WL 1910161 at *1 (5th Cir. 2000) (table disposition). Under that standard, the errors must have prejudiced the defendant by substantially influencing the grand jury to indict. *United States v. Byous*, 129 F.3d 607 (5th Cir. 1997) (unpublished) (citing *Nova Scotia*, 487 U.S. at 256). That inquiry requires an examination of "the alleged errors to assess their influence, if any, on the grand jury's decision to indict in the factual context of the" case at bar. *Nova Scotia*, 487 U.S. at 257.

Fleming points to the testimony of two agents that she alleges was knowingly incorrect. First she points to the testimony of Agent Sly. Fleming contends that Agent Sly's testimony was incorrect when she testified that (1) Debbie Ibarra was a regular employee instead of the general manager of the company; (2) the sale of Medicare beneficiary information was illegal; and (3) Fleming's company never bought any of the equipment for which she billed Medicare. Additionally, she complains of Agent Savin's testimony that (1) he did not know which statute or regulation prohibited the sale of patient files, and (2) the investigation was triggered by a telephone call from a bank.

Assuming for the sake of argument that the testimony in question was false—a finding the court expressly does *not* make here—the court would have to find that the statements substantially affected the grand jury's decision to indict. A review of the testimony in front of the grand jury

4

demonstrates that even in the absence of this testimony, the grand jury had sufficient evidence to indict. Therefore, Fleming's motion to dismiss on this ground is denied.

**3.     Pre-Indictment Delay**

Third, Fleming argues that her Fifth Amendment right to due process was violated due to the length of the prosecution's pre-indictment delay. She contends that the passage of time has made it impossible for her to find witnesses to impeach government witnesses. She is unable to identify these witnesses—all former contract employees, or the testimony they would impeach beyond identifying the government witnesses she believes would be impeached. Additionally, Fleming argues that in the intervening time period she discarded a computer that contained email relevant to the case. She argues that these email would both impeach a government witness, and add to incomplete email that the government will use as exhibits.

"For preindictment delay to violate the due process clause it must not only cause the accused substantial, actual prejudice, but the delay must also have been intentionally undertaken by the government for the purpose of gaining some tactical advantage over the accused in the contemplated prosecution or for some other impermissible, bad faith purpose." *United States v. Crouch*, 84 F.3d 1497, 1514 (5th Cir. 1996) (en banc). "To establish prejudice, the defendant must offer more than mere speculation of lost witnesses, faded memories or misplaced documents; he must show an actual loss of evidence that would have aided the defense and that cannot be obtained from other sources." *United States v. Gulley*, 526 U.S. 809, 820 (5th Cir. 2008) (citing *id* at 1515 n. 23). The prejudice must be actual and substantial. *Id.* Because, the Due Process clause does not encompass a right not to be tried, but rather protects the substantive interest against wrongful conviction, assessing prejudice pretrial is all but impossible. *Crouch*, 84 F.3d at 1516. Therefore, "in all but the very

clearest and most compelling cases, the district court, rather than grant such a motion prior to trial, should carry it with the case, and make the determination of whether actual, substantial prejudice resulted from the improper delay in light of what actually transpired at trial." *Id.*

In this case, Fleming's arguments of speculative lost witnesses and missing documents do not present one of the "very clearest and most compelling cases" suitable for dismissal pretrial. *See id.* Therefore, her motion is denied. However, she has leave to refile the motion post-trial if she believes she can show both (1) actual and substantial prejudice, and (2) that the government intentionally undertook to delay indictment to gain a tactical advantage.

**4.     Selective Prosecution**

Last, Fleming argues that the government chose to indict only black individuals allegedly involved in the scheme even though there were white individuals with similar involvement. The decision of whether or not to prosecute lies within the discretion of the prosecutor as long as he does not base his decision on unconstitutional factors like race. *United States v. Armstrong*, 517 U.S. 456, 465–66, 116 S. Ct. 1480 (1996). A "court's consideration of an Equal Protection-based claim of selective prosecution necessarily begins with a presumption of good faith and constitutional compliance by the prosecutors." *In re United States*, 397 F.3d 274, 284 (5th Cir. 2005) (citing *id*).

To rebut the presumption of regularity, the defendant must meet two requirements. *United States v. Ramirez*, 765 F.2d 438, 439 (5th Cir. 1985). The Fifth Circuit has described the burden on the defendant as a heavy one and is "reticent to interfere" with the "exercise of executive discretion" inherent in "[t]he decision to prosecute one person and not another." *United States v. Webster*, 162 F.3d 308, 333 (5th Cir. 1998); *United States v. Jennings*, 724 F.2d 436, 445 (5th Cir. 1984). First, the defendant must make a prima facie case by presenting "evidence that similarly situated

individuals of a different race could have been prosecuted, but were not" *In re United States*, 397 F.3d at 284. "Second, having made the first showing, he must then demonstrate that the government's selective prosecution of him has been constitutionally invidious." *Ramirez*, 765 F.2d at 440.

Fleming's arguments in support of her selective prosecution claims are two-fold. First, she argues that Elwyn Clarence Gandy, who is white, is similarly situated to her and yet was not prosecuted. Second, she argues that various of her white employees were not prosecuted while her black employees were. As a threshold matter, Fleming does not have standing to bring a selective prosecution claim on behalf of her co-defendants.[2] Therefore, Fleming may only succeed if she can demonstrate that someone similarly situated to her could have been prosecuted but was not because of race. Fleming argues that Gandy owned a 35% share of E&R Medical Supply—one of the several companies named in the indictment. The government does not dispute this relationship. Additionally, Fleming alleges that Gandy provided the start-up money for another of the companies—Medical Equipment and Supply Center ("MESC"). According to the motion, Gandy worked at MESC and did repairs. He allegedly told other employees that he was responsible for the fact that they had a job. Fleming claims that Gandy also provided the money to buyout her co-defendant Chaney. The only evidence Fleming offers in support of this relationship is a contract between MESC and Gandy's Repairs to repair wheelchairs and scooters for MESC. In contrast, Gandy's ownership share of E&R is supported by a written partnership agreement.

---

[2] Even if she did have standing, her claim would fail because the differences between the charged and uncharged employees are based on permissible factors, such as level of culpability. For example, all of the defendants, except Billy Perkins, owned businesses that participated in the alleged scheme. Therefore, these defendants are not similarly situated to regular employees. Additionally, Billy Perkins allegedly telephoned Medicare and fraudulently represented himself to be the owner of one of the companies, something the other regular employees did not do. Therefore, none of the other employees suggested by Fleming is similarly situated to any of the defendants.

The government counters that Gandy's level of culpability in the scheme was significantly different. Gandy owned 35% in one company, while Fleming owned 100% of three companies, and 65% of a fourth. Over the course of the conspiracy Fleming received over $5 million in fraud proceeds while Gandy received $56,738.00. Additionally, the Medicare remittance statements that Gandy received for E&R did not contain millions of dollars of false Medicare claims like those received by defendants Ebhamen and Arthur. Therefore, the government contends that Fleming and Gandy were not similarly situated. The court agrees.

"Defendants are similarly situated when their circumstances present no distinguishable legitimate prosecutorial factors that might justify making different prosecutorial decisions with respect to them." *United States v. Olvis*, 97 F.3d 739, 744 (4th Cir. 1996). Legitimate factors considered by the prosecution include *inter alia* the level of cooperation of the suspects, the strength of evidence against the different suspects, the defendant's role in the crime, defendant's candor, the defendant's criminal history in relation to others, prosecutorial resources, the prosecution's general deterrence value, and the government's enforcement priorities. *See Armstrong*, 517 U.S. at 465; *Olvis*, 97 F.3d at 744. The court finds that Gandy and Fleming are not similarly situated for the purposes of this inquiry, because other legitimate factors distinguish the positions of Fleming and Gandy. Accordingly, Fleming has failed to meet her heavy burden of showing a prima facie case. Therefore, her request for discovery based on this claim is also denied.

## CONCLUSION

Pending before the court are Fleming's motions to dismiss the indictment. Dkts. 202, 204. Her claim based on abuse of the grand jury is DENIED without prejudice to refiling post-trial. All other claims on which she bases her motions to dismiss the indictment are DENIED with prejudice. Additionally, her requests for production premised on her claim of selective prosecution is likewise DENIED.

It is so ORDERED.

Signed at Houston, Texas on January 12, 2009.

Gray H. Miller
United States District Judge