IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | CRIMINAL ACTION H-07-0513 |
| v. | § | |
| | § | CIVIL ACTION H-11-0135 |
| RHONDA FLEMING. | § | |

**MEMORANDUM OPINION AND ORDER**

Defendant Rhonda Fleming, proceeding *pro se*, filed a motion to vacate, set aside, or correct her sentence under 28 U.S.C. § 2255. (Docket Entry No. 900.) The Government filed a response in opposition (Docket Entry No. 904), to which Defendant filed a reply (Docket Entry No. 917).

Based on consideration of the motion, the response and the reply, the record, and the applicable law, the Court DENIES the section 2255 motion, as follows.

*Procedural Background and Claims*

The jury found Defendant guilty of health care fraud and wire fraud and of conspiring to commit those offenses, and of money laundering. She was sentenced to prison terms of 360, 95, and 135 months, respectively. The convictions were affirmed on appeal. *United States v. Fleming*, No. 09-20877 (5th Cir. 2011).

Defendant specifies the following claims for relief in this section 2255 motion. As noted by the Government, Defendant's numbering did not include an issue designated as (4).

For the sake of continuity with the parties' pleadings, the Court will follow the parties' numbering system.

   (1)   Pre-indictment counsel failed to tell her that the plea agreement had a time limit for acceptance;

   (2)   The trial court violated her right to counsel at the sentencing hearing;

   (3)   She was denied a due process right to show insanity and/or diminished capacity due to the trial court's refusal to appoint an independent mental health expert;

   (5)   She was denied her right of confrontation at trial and sentencing;

   (6)   She was denied her right to an impartial trial judge during trial and sentencing;

   (7)   She was denied her right to testify in narrative form;

   (8)   Her sentences and fines were excessive and violated the Fifth and Eighth Amendments;

   (9)   She was constructively denied counsel and/or standby counsel was ineffective;

   (10)  She was denied her right to counsel of her choice;

   (11)  She was denied a "*Garcia* hearing" and denied counsel during a critical stage of the proceedings;

   (12)  She is actually innocent of wire fraud and money laundering;

   (13)  The Government unlawfully seized funds as forfeiture; and

   (14)  The restitution order is excessive and unlawful.

*Standard of Review*

After a defendant has been convicted and exhausted his appeal rights, a court may presume that "he stands fairly and finally convicted." *United States v. Frady*, 456 U.S. 152, 164 (1982). He may challenge his conviction or sentence after it is final by moving to vacate, set aside, or correct the sentence under 28 U.S.C. § 2255. Relief under section 2255 is reserved, however, for violations of "constitutional rights and for that narrow compass of other injury that could not have been raised on direct appeal and would, if condoned, result in a complete miscarriage of justice." *United States v. Capua*, 656 F.2d 1033, 1037 (5th Cir. 1981). Section 2255 relief is available only in limited circumstances, and is not meant to substitute for an appeal. *United States v. Shaid*, 937 F.2d 228, 231–32 (5th Cir. 1991). Issues raised and decided on appeal from the underlying conviction are not considered in section 2255 proceedings. "It is settled in this Circuit that issues raised and disposed of in a previous appeal from an original judgment of conviction are not considered in section 2255 Motions." *United States v. Kalish*, 780 F.2d 506, 508 (5th Cir. 1986).

Generally, a conviction will be overturned under section 2255 only if the defendant raises "issues of constitutional or jurisdictional magnitude" and demonstrates "cause and actual prejudice." *Id.* That is, section 2255 relief is not to be used for the routine correction of run-of-the-mill legal or factual errors, particularly if these issues could have been raised on appeal.

*Analysis*

*Issues Raised and Rejected on Direct Appeal*

The Government correctly argues that the following issues were raised by Defendant and rejected by the Fifth Circuit Court of Appeals on direct appeal: (3),[1] (5), (6), (8), (9), and (14). These issues will not be reconsidered here, and are dismissed. *See Kalish*, 780 F.2d at 508.

To any extent Defendant raises claims in this section 2255 proceeding that should have been raised on direct appeal, she fails to show that the issues could not have been raised on appeal, and she neither alleges nor shows "cause and prejudice." *See United States v. Faubion*, 19 F.3d 226, 233 (5th Cir. 1994); *United States v. Willis*, 273 F.3d 592, 595 (5th Cir. 2001). Nor does Defendant establish an error of constitutional magnitude that would result in a complete miscarriage of justice if unaddressed in this proceeding. *See Shaid*, 937 F.2d at 231.

*Ineffective Assistance of Pre-Indictment Counsel*

Defendant claims in Issue #1 that pre-indictment counsel, Mike DeGeurin and Jennifer Ahlen, were ineffective in failing to inform her that the Government's 2006 plea

---

[1] Defendant acknowledges that this issue was raised on appeal, but she argues that a new Fifth Circuit Court of Appeals case, *Simons v. Epps*, 463 F. App'x 339 (5th Cir. 2012), should be retroactively applied to her case. Defendant's reliance on *Simons* is misplaced. *Simons* was a death penalty case that expressly limited its holding to the particular facts and circumstances of that case, and did not establish a new constitutional protection regarding mental health experts.

bargain offer had an expiration date. In support, she relies on *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399 (2012) and *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376 (2012), for her argument that counsel were required to inform her of the plea offer's expiration date. Specifically, Defendant asserts the following in her section 2255 motion:

> In 2006, defense counsel, Jennifer Ahlen relayed a plea offer from the Government of ten years. *Ms. Ahlen, an attorney with Mr. Mike DeGeurin's firm did not explain to the Petitioner that the plea agreement had to be accepted before the Government obtained an indictment.*
>
> The Supreme Court in *Missouri v. Frye*, __ U.S. __, 132 S. Ct. 1399 (2012) and in *Lafler v. Cooper*, __ U.S. __, 132 S. Ct. 1376 (2012), held that defense counsel have a responsibility to be effective in plea bargaining and negotiations, as well as to explain the terms of a plea agreement.
>
> It is likely that Petitioner would not have been indicted in December 2007, if Ms. Ahlen had explained there was a time limit on the acceptance of the plea agreement. Before being indicted, the Petitioner had been cooperating with the Government through her attorneys.
>
> The Petitioner was prejudiced by this error because the next plea offer was 20 years, double the original offer and required the Petitioner to waive her right to appeal.
>
> There is a reasonable probability that the Court would have accepted the ten year plea agreement because the Court accepted all other plea agreements in this case.
>
> *Mr. DeGeurin was lead counsel and did not tell the Petitioner there was a time limit on acceptance of the plea agreement.* The offer was discussed with Ms. Ahlen, not with Mr. DeGeurin.

(Docket Entry No. 900, p. 11, emphasis added.) Thus, the crux of Defendant's claim is that she was not informed of, and remained unaware of, any expiration date for the plea offer,

5

and that she would have accepted the offer but for counsel's error. She proffers this allegation despite the fact that she admits Ahlen gave her a copy of the written plea agreement during her visit with Defendant, and that "Defendant held the plea offer in her hands." (Docket Entry No. 917, p. 1.)

In light of Defendant's assertions of ineffective assistance against her attorneys, the Court deemed that she had waived her attorney-client privilege as to these attorneys regarding the 2006 plea offer, and ordered them to respond to Defendant's allegation of ineffective assistance of counsel. In response, Jennifer (Ahlen) Carroll submitted the following affidavit testimony:

> I received knowledge of a plea offer (that included a deadline of July 28, 2006) on July 14, 2006 by facsimile letter from Assistant United States Attorney Balboni addressed to Mr. Mike DeGeurin. Then on July 24, 2006 I received a draft plea agreement addressed to me from Mr. Balboni. On July 26, 2006, I visited Ms. Fleming at USP Bryan with the expressed purpose of discussing the plea offer, the draft plea agreement and the plea expiration date. I left a copy of the draft plea agreement with Ms. Fleming on July 26, 2014.
>
> Ms. Fleming rejected Mr. Balboni's plea agreement orally on the 26th and in writing on July 27th. Although Ms. Fleming did express an interest in a plea agreement, she did not agree to the terms as presented in the July 14th facsimile agreement or the July 24th draft agreement received from Mr. Balboni.

(Docket Entry No. 957.) Although Defendant requested that Mike DeGeurin be called to testify regarding the offer in context of this section 2255 proceeding (Docket Entry No. 917, p. 1), Mr. DeGeurin testifies in his affidavit that he did not have any discussions about plea agreements or any specific plea offer with Defendant after March 7, 2005. *Id*.

6

It is clear from these affidavits that counsel provided Defendant a copy of the plea agreement offer containing the terms and expiration date, and that Defendant expressly rejected the offer in writing prior to the offer's stated expiration date. Defendant admits that she received a copy of the written plea offer, and the document she admits she received from Ahlen during her visit contained the expiration date in clear, unambiguous terms. Accordingly, Defendant was provided the expiration date prior to the expiration date. Regardless, the Supreme Court and the Fifth Circuit Court of Appeals have not determined that *Frye* and *Lafler* apply retroactively in context of a collateral review proceeding. Even assuming they were to apply to the instant case and fact situation, Defendant establishes neither deficient performance nor prejudice under *Strickland*, and habeas relief is unwarranted on this claim.

*Right to Counsel at Sentencing/Denial of Counsel of Choice*

In Issue #2, Defendant claims that she was denied her right to counsel of her choice at sentencing. In support, she argues that she represented herself at trial, but that she later asserted her right to counsel post-verdict. She directs the Court's attention to Docket Entries #427, #433, and #418. Contrary to her arguments made to this Court in her prior motions, Defendant now argues that her post-verdict motions were actually "retractions" of her right to represent herself, and stood as requests for appointment of counsel. Construed in this light, Defendant appears to argue that she was denied counsel for sentencing after requesting

7

to withdraw *pro se*, or that she was denied counsel of her choice. Because Defendant's Issue #2 and Issue #10 overlap one another, they will be considered together.

Defendant's arguments are contrary to the record and unpersuasive. In Docket Entry No. 427, Defendant, who had been granted her requests to represent herself at trial, moved for appointment of hybrid counsel, which the Court denied. The Court had, however, provided standby counsel for Defendant. In Docket Entry No. 418, Defendant moved to dismiss her standby counsel due to her dissatisfaction with his services, but did not terminate, or ask to terminate, her *pro se* status. The Court denied her motion, indicating that it found it advisable for Defendant to have stand-by counsel, particularly one already possessing familiarity with the case. (Docket Entry No. 433.)

Further, Defendant renewed on the record her request for removal of her court-appointed standby counsel, while simultaneously affirming her decision to proceed *pro se* at trial:

>THE COURT:     All right. You do intend to participate and be present?
>
>DEFENDANT:     Yes, sir.
>
>THE COURT:     All right. As you know, Mr. Goldsmith is your standby counsel in this case. And he will be available to consult with you if you have questions about evidence, if you have questions about procedure or legal matters that you need advice on. His role as standby counsel is to assist you and give you advice on those matters.
>
>     I do have to tell you that if at any time during these proceedings you do decide to withdraw and not participate[,] or disrupt the proceedings[,] that I would have the right at that point to terminate your self-representation and

appoint Mr. Goldsmith as your trial counsel if you were not going to be present in the courtroom. So, you understand that?

DEFENDANT: Yes, sir. And I would just like it to go on the record that I have asked the Court six times to dismiss Mr. Goldsmith.

THE COURT: Yes, I understand. I understand. And I am not going to do that.

So, is it still your wish to represent yourself in this case despite my admonitions that – all of the reasons that you should not be doing that? Is that correct?

DEFENDANT: Yes, your Honor.

(Docket Entry No. 655, p. 6.)

At no point did Defendant move to terminate her self-representation and be appointed counsel to represent her for purposes of sentencing. *See United States v. Patterson*, 42 F.3d 246, 248 (5th Cir. 1994) ("Patterson did not unequivocally withdraw his prior waiver and reassert his right to counsel. If he had, this might be a different issue."); *see also United States v. Tate*, 2013 WL 3456742, at *2 (5th Cir. July 10, 2013).

Due to its lack of clarity and confusion of arguments, Defendant's issue might also be construed as a complaint that this Court refused to appoint her new standby counsel and that she was denied her right to counsel of choice. Defendant's argument is groundless. A criminal defendant proceeding *pro se* at trial has no constitutional right to standby counsel; accordingly, Defendant had no Sixth Amendment right to standby counsel of her choice. *See United States v. Oliver*, 630 F.3d 397, 413 (5th Cir. 2011).

9

To any extent Defendant may be attempting to argue that the forfeiture proceedings left her without funds to retain counsel of her choice, no Sixth Amendment violation is shown. The Fifth Circuit Court of Appeals has repeatedly upheld Defendant's forfeiture proceedings against her numerous appeals challenging those proceedings. *See Fleming v. United States*, No. 13-10042, 2013 WL 4029364 (5th Cir. Aug. 7, 2013); *United States v. Fleming*, No. 09-20877 (5th Cir. 2011) (holding that Fleming waived her claim that this Court erred in not analyzing forfeiture under section 983(g); further holding as "so lacking in merit as to not warrant discussion" Defendant's claim that the jury should have determined forfeiture); *United States v. $670,706.55*, No. 09-20154 (5th Cir. 2010); *Fleming v. United States*, No. 13-10042 (5th Cir. 2013).

Habeas relief is not warranted on these claims.

*Ineffective Assistance as to Narrative Testimony*

In Issue #7, Defendant argues that standby trial counsel was ineffective in not advising her that she could testify in narrative form. She further appears to argue that the Court should have informed her, *sua sponte*, that she had the right to testify in her defense in narrative form. As an initial consideration, the Court notes that Defendant cites no authority for her overarching argument that she had a constitutional right to testify *pro se* in narrative form. The Court further notes that Defendant's argument is premised upon her assumption that this Court would have allowed her to testify in narrative form upon her

request. Because the Court was never called upon to resolve the issue, Defendant's assumption is unsupported in the record.

Defendant admits that her standby counsel suggested she could write down her questions and he would ask her them on the stand; she states, however, that she "chose not to 'invite' standby counsel's participation in the trial by allowing him to cross-examine her." (Docket Entry No. 917, p. 2.) To the extent Defendant claims standby counsel should have told her that she could testify in narrative form, no *Strickland* claim is raised. Criminal defendants proceeding *pro se* are not constitutionally entitled to standby counsel. *See United States v. Oliver*, 630 F.3d 397, 413 (5th Cir. 2011). Accordingly, without a constitutional right to standby counsel, Defendant had no Sixth Amendment right to the effective assistance of such counsel. *See id.* at 414.

To the extent Defendant asserts "structural error" by arguing she did not waive her right to testify and was otherwise prevented from testifying, her claim is not borne out by the record. To the contrary, Defendant admits that she "assumed as a pro se defendant she would only testify through her attorney, which would have violated her Faretta right." *Id*. This was not an assumption Defendant placed on the record or otherwise presented to the Court during trial, nor did she ask the Court how she should proceed if she elected to testify *pro se*. Accordingly, her reliance on *United States v. Hung Thein Ly*, 646 F.3d 1309, 1313 (11th Cir. 2011), is misplaced. To the contrary, the record shows that at the point in time

the relevant question of how Defendant might proceed in testifying *pro se* was presented to the Court, Defendant had already decided that she would not be testifying:

> AUSA: The next issue is, without asking her at this moment if she's intending to testify, we have to come up with some kind of protocol as to how that's going to happen, if, in fact, she does testify.
>
> THE COURT: Right.
>
> AUSA: Or wants to testify. I don't think she can ask herself questions. So, I might suggest everybody think about it. Perhaps maybe she would draft up the questions she would ask herself and then – I don't know if that would be proper for standby counsel to ask just the questions. That way if he doesn't elaborate, he will not be participating in any way other than to just be the person asking the question for Ms. Fleming to respond to.
>
> THE COURT: All right.
>
> DEFENDANT: I'll simplify things. I will not be testifying[.]
>
> THE COURT: Okay.

(Docket Entry No. 665, pp. 103–04.) Defendant complains here that, during the above exchange, "[n]o one advised [her] that she had the ability to provide narrative testimony." (Docket Entry No. 900, p. 20.) Defendant's argument ignores the fact that, by informing the Court she would not be testifying, she preempted any further discussion of the question, and obviated any need for the Court to resolve the matter. Defendant later affirmed her decision during a bench conference, informing the Court that she would not present any evidence or testimony and would rest. (Docket Entry No. 670, p. 149.)

Although the record is replete with instances of Defendant's asking the Court for procedural guidance during trial, as did the other parties through counsel, Defendant never

12

requested any guidance or ruling from this Court as to how her *pro se* testimony might proceed. Her silence regarding this particular issue, in conjunction with her decision not to testify announced at the very instant the question of how she might testify was presented to the Court, refutes her current argument that she was denied her right to testify.

Habeas relief is not warranted on these claims.

*Denial of "Garcia" Hearing*

In Issue #11, Defendant claims that she was denied a "Garcia" hearing and denied pretrial counsel. In support, she claims that attorneys Brent Newton and Samy Khalil were appointed to represent her but were then allowed to withdraw without her knowledge or consent, leaving her without counsel during a critical stage of the prosecution.

Defendant's assertion of being without pretrial counsel during a critical stage of the proceedings is refuted by the record. The record shows that on January 10, 2008, the Federal Public Defender was appointed to represent Defendant. (Docket Entry No. 77.) On January 11, 2008, federal public defender Brent E. Newton filed a notice of appearance as counsel of record for Defendant. (Docket Entry No. 80.) Defendant appeared for arraignment with Mr. Newton on that same day, and entered her plea of not guilty to all pending charges. (Docket Entry No. 86.) On January 17, 2008, the Federal Public Defender filed a notice of attorney in charge, naming federal public defender Samy K. Khalil as attorney in charge for Defendant. (Docket Entry No. 95.) On February 13, 2008, Mr. Khalil filed under seal an *ex parte* motion to withdraw based on a conflict of interest. (Docket

13

Entry No. 122.) The Court granted the motion on February 14, 2008 (Docket Entry No. 123), and granted Defendant a continuance in light of the change in counsel. (Docket Entry No. 125.) On February 15, 2008, the Court appointed R. Christopher Goldsmith to represent Defendant under the Criminal Justice Act. (Docket Entry No. 128.) Mr. Goldsmith remained Defendant's appointed counsel until the Court allowed Defendant to proceed *pro se*, at which point Mr. Goldsmith was appointed as Defendant's standby counsel. Defendant does not establish that she was without pretrial counsel during any critical stage of the proceedings.

Nor does Defendant establish that she had a constitutional right to a *Garcia* hearing prior to the Court's granting of Mr. Khalil's *ex parte* motion to withdraw. The Sixth Amendment right to counsel includes the "right to representation that is free from any conflict of interest." *United States v. Vaquero*, 997 F.2d 78, 89 (5th Cir. 1993). "A conflict exists when defense counsel places himself in a position conducive to divided loyalties." *United States v. Carpenter*, 769 F.2d 258, 263 (5th Cir. 1985). If a defendant chooses to proceed with representation by counsel who has a conflict of interest, a district court must conduct what is commonly known as a "*Garcia* hearing" to ensure a valid waiver by the defendant of his Sixth Amendment right to conflict-free counsel. *United States v. Garcia*, 517 F.2d 272, 278 (5th Cir.1975), *abrogated on other grounds by Flanagan v. United States*, 465 U.S. 259, 263 (1984). In the instant case, Mr. Khalil alerted the Court to an

actual conflict of interest, and moved to withdraw on that basis. The Court granted the motion, new counsel was appointed, and no *Garcia* hearing was necessary.

Habeas relief is not warranted on these claims.

*Actual Innocence*

Defendant claims in Issue #12 that she is actually innocent of wire fraud and money laundering. The Government correctly asserts that Defendant raises this claim as a free-standing actual innocence claim, which is not a cognizable federal habeas claim. *See Foster v. Quarterman*, 466 F.3d 359, 367 (5th Cir. 2006) ("[A]ctual-innocence is not an independently cognizable federal-habeas claim."); *Matheson v. United States*, 440 F. App'x 420, 421 (5th Cir. 2011) (applying this rule in context of a section 2255 motion). This issue is dismissed for failure to raise a cognizable federal habeas claim.

*Unlawful Forfeiture Proceedings*

Defendant's challenges to the Government's forfeiture proceedings in Issue #13 have been sufficiently litigated in separate proceedings before this Court and before the Fifth Circuit Court of Appeals, are *res judicata*, and will not be addressed again within the context of this section 2255 proceeding. *See* Docket Entry No. 898; *Fleming v. United States*, No. 13-10042, 2013 WL 4029364 (5th Cir. Aug. 7, 2013); *United States v. Fleming*, No. 09-20877 (5th Cir. 2011) (holding that Fleming waived her claim that this Court erred in not analyzing forfeiture under section 983(g); further holding as "so lacking in merit as to not warrant discussion" Defendant's claim that the jury should have determined

15

forfeiture); *United States v. $670,706.55*, No. 09-20154 (5th Cir. 2010); *Fleming v. United States*, No. 13-10042 (5th Cir. 2013).

Accordingly, Defendant's challenges to the forfeiture proceedings are dismissed.

### *Conclusion*

Defendant's section 2255 motion (Docket Entry No. 900) is DENIED. A certificate of appealability is DENIED.

The Clerk of Court is ORDERED to ADMINISTRATIVELY CLOSE and TERMINATE all pending motions in the corresponding civil case, C.A. No. H-12-2799.

Signed at Houston, Texas on April 7, 2014.

_____
Gray H. Miller
United States District Judge