United States District Court
Southern District of Texas

**ENTERED**
April 16, 2021
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | § | |
| | § | |
| v. | § | CRIMINAL ACTION NO. H-07-513-1 |
| | § | |
| RHONDA ANN FLEMING | § | |

MEMORANDUM OPINION AND ORDER

Defendant Rhonda Ann Fleming, federal prisoner register number 20446-009, filed

the pending fifth pro se motion for compassionate release pursuant to 18 U.S.C. §

3582(C)(1)(A).   (Docket Entry No. 1205.)   She raises the same grounds for relief as

presented in her prior motions, but adds as an exhibit copies of certain medical records.

The Court's docket shows that defendant has paid the $200.00 monetary sanction imposed

against her by the Fifth Circuit for her filing of groundless, repetitive motions.   The

motion is ripe for disposition on the merits.

Having considered the motion, the exhibit, the record, matters of public record, and

the applicable law, the Court DENIES defendant's fifth motion for compassionate release,

as explained below.

Background

Defendant is a 55-year-old female prisoner currently confined at the Bureau of

Prisons ("BOP") Tallahassee FCI in Florida.   Defendant was found guilty by a jury of

health care fraud and wire fraud, conspiracy to commit those crimes, and money

laundering.  United States v. Fleming, Appeal No. 09-20877 (5th Cir. 2011).  The Court sentenced defendant on January 22, 2010, to 360 month's incarceration followed by a three-year term of supervised release.  Judgment was entered on February 8, 2010. Restitution was ordered in an amount totaling over $6.2 million.  BOP records indicate that defendant's anticipated release date is September 29, 2033.   Defendant has served approximately 135 months, or 37%, of the sentence imposed by this Court.

As extraordinary and compelling reasons for a compassionate release, defendant reports that she had bariatric surgery in 2003 and cannot absorb certain nutrients, was hospitalized for five days due to anemia, is pre-diabetic and obese, has a "chronic blood disorder," plantar fasciitis, and a "cervical injury."  (Docket Entry No. 1205, p. 1.)

Defendant asks the Court to grant the motion, reduce her sentence to time served, and allow her to return home so she can exercise and avoid becoming diabetic.

## Legal Standards

Defendant brings his motion for a sentence reduction and compassionate release under 18 U.S.C. § 3582(c)(1)(A)(i), which allows a court in its discretion to modify a sentence under certain circumstances.  Under the current version of the statute, a motion may be made by either the Director of the BOP or by a prisoner after the prisoner has fully exhausted his administrative rights.  18 U.S.C. § 3582(c)(1)(A).

Compassionate release under section 3582(c)(1)(A) authorizes a court to modify a defendant's term of imprisonment if the court finds "extraordinary and compelling reasons

warrant such a reduction," and that "a reduction is consistent with applicable policy statements issued by the Sentencing Commission."  18 U.S.C. §§ 3582(c)(1)(A), (A)(i).

The Sentencing Commission has addressed in a policy statement what qualifies as "extraordinary and compelling reasons" to release a defendant from BOP custody.  See U.S.S.G. § 1B1.13.[1]  The relevant policy statement outlines four categories of circumstances that may constitute "extraordinary and compelling reasons" for a sentence reduction, based on terminal medical conditions, age, family circumstances, and "other reasons."  U.S.S.G. § 1B1.13, Application Note 1.  However, the court's reference to the Guidelines is only one step in its own determination of whether extraordinary and compelling reasons warrant a reduction of a defendant's sentence.  The court is free to determine whether a defendant's particular medical condition constitutes extraordinary and compelling reasons for a compassionate release.  See United States v. Gonzalez, 819 F. App'x 283, 284 (5th Cir. Sept. 4, 2020); United States v. Hernandez, 645 F.3d 709, 712 (5th Cir. 2011) ("[T]he decision whether to ultimately grant a modification is left to the sound discretion of the trial court.").  A defendant in a motion brought under section 3582(c)(1)(A) has the burden to establish that relief is warranted in his case.

---

[1]The Fifth Circuit Court of Appeals has not determined whether Sentencing Guideline § 1B1.13 applies to motions for compassionate release, and recognizes that there is a split of authority as to the issue.  See, e.g., United States v. Gowdy, 832 F. App'x 325, 327 (5th Cir. Dec. 28, 2020).

The court must also consider the factors set forth in 18 U.S.C. § 3553(a), to the extent they are applicable.  The court must base its decision on "a thorough factual record" and "must provide specific factual reasons, including but not limited to due consideration of the § 3553(a) factors, for its decision."  United States v. Chambliss, 948 F.3d 691, 693 (5th Cir. 2020).  These factors include the nature and circumstances of the offense; the history and characteristics of the defendant; and the need for the sentence to reflect the seriousness of the offense, promote respect for the law, provide just punishment, afford adequate deterrence, protect the public, and provide the defendant with needed training, medical care, or other treatment in the most effective manner.  18 U.S.C. § 3553(a).  The policy statement recognizes that the sentencing court "is in a unique position to determine whether the circumstances warrant a reduction . . . after considering the factors set forth in 18 U.S.C. § 3553(a) and the criteria set forth in this policy statement[.]"  U.S.S.G. § 1B1.13 cmt. 4.

Moreover, Sentencing Guideline section 1B1.13(2) authorizes a sentence reduction only if the defendant "is not a danger to the safety of any other person or the community, as provided in 18 U.S.C. § 3142(g)."

Thus, a defendant may be eligible for compassionate release under section 3582(c)(1)(A) if the court finds "extraordinary and compelling reasons" to warrant a sentence reduction, the defendant is found not to pose a risk of danger to the community,

4

and a sentence reduction is consistent with United States Sentence Commission policy statements.

## Analysis

### Exhaustion

The Court accepts defendant's prior documentation showing that she exhausted her administrative remedies prior to filing her motions for compassionate release.

### Extraordinary and Compelling Reasons

Defendant asserts entitlement to a compassionate release based on malabsorption of certain nutrients due to bariatric surgery in 2003, anemia, being pre-diabetic and obese, a "chronic blood disorder," plantar fasciitis, and a "cervical injury."

The Court has carefully reviewed the medical records submitted by defendant with her motion. The records show that, in late March of 2011, BOP medical care providers noted she had been hospitalized for five days due to iron-deficiency anemia. The condition was thought to be caused by her bariatric surgery of 2003. The condition was treated with blood transfusions, and she was released back to prison. (Docket Entry No. 1205, p. 2.) Blood tests dated March 21, 2011, showed low hemoglobin and hematocrit levels, as did test results the following year on July 12, 2012. Id., pp. 5–6. She was ordered to take ascorbic acid and iron supplements. Defendant's blood tests in November 2020 showed low hemoglobin levels, with a mildly-elevated A1C (indicative of an increased risk for diabetes). Id., pp. 3–4. She was given splints for plantar fasciitis in 2014 and "alternative institutional shoes" in June 2020. No reason was charted for the latter order. Id., p. 7.

Defendant was evaluated in the Chronic Care Clinic on December 9, 2020.  She reported no complaints regarding gastric issues or osteoarthritis.  She was able to perform all activities of daily living (ADLs), tolerated a regular diet, and was compliant with medications.  Id., p. 8.  She denied chest pain, nausea, vomiting, constipation, diarrhea, blurred vision, headaches, mental health issues, or motor or sensory deficits.  She reported no pain of any nature, and her vitals were charted as normal.  Id.  She was prescribed multi-vitamins for nutritional deficiencies and naproxen for an "unspecified cervical disc disorder."  Id., p. 9.  She is currently receiving monthly vitamin B-12 injections.  Id.[2]

No "chronic blood disorder" appears in the records; defendant had an episode of iron-deficiency anemia in 2011, for which she was hospitalized, treated, and returned to custody.  She is being treated for her bariatric-surgery nutritional-absorption issues with multi-vitamins and vitamin B-12 injections.  There is no indication that these measures have not been helpful  in controlling any iron or nutritional deficiencies.  Although defendant told the Court in her prior motions that she has the chronic blood disorder thalassemia, there is no indication in her medical records that she has ever been diagnosed with such a condition.

Moreover, defendant complains that her current weight gain is the result of COVID-19 quarantine conditions that do not allow sufficient space or opportunities for regular

---

[2]Defendant has also included copies of various web-based lifestyle and health blogs related to her health concerns.  Id., pp. 12–17.  However, the Court gives these informal social-based communications and "health tips" no credence for purposes of the pending motion.

exercise.  She argues that, "If the Court grants compassionate release, she would be in her parents' home or her son's home, where they have exercise equipment."  Id., p. 1.  The Court recognizes the importance of exercise in maintaining health; however, it is not inclined to forgive the majority of defendant's lengthy sentence in order to improve her access to exercise equipment.  In lieu of reducing her sentence by nearly 63%, the Court suggests that defendant discuss her weight and exercise concerns with BOP health providers to explore available exercise options at her facility.  There is no indication in defendant's medical records that her current weight leaves her at an elevated risk of death or serious illness should she contract COVID-19, or that BOP medical staff would not be able to treat her.

The Centers for Disease Control and Prevention (the "CDC") has not recognized individuals with prediabetes, cervical disc disorders, plantar fasciitis, or treatable iron-deficiency anemia as having an elevated risk of death or serious injury as to COVID-19.[3] Defendant does not show that she has an elevated risk for death or serious injury should she contract COVID-19, or that her ability for self-care has been impaired.  The Fifth Circuit has held that fear of COVID-19, standing alone, does not warrant a compassionate release.  See United States v. Thompson, 984 F.3d 431, 435 (5th Cir. 2021).

---

[3]Information regarding the CDC's analysis of COVID-19 risk conditions can be found at https://www.cdc.gov/coronavirus/2019-ncov/need-extra-precautions/people-with-medical-cond itions.html#MedicalConditionsAdults.

Defendant's BOP facility, Tallahassee FCI, currently reports having two prisoners with positive COVID-19 test results.  A total of 438 prisoners have recovered from COVID-19 infections at the facility, with no reported inmate deaths.[4]  Although defendant expresses legitimate and common concerns regarding COVID-19, she does not establish that her facility cannot manage an outbreak or that the facility could not treat her if she were to contract the virus.  It appears from the BOP's online statistics that Tallahassee FCI is handling the pandemic appropriately.  Moreover, the BOP reports that it is working with the CDC and the federal government's COVID-19 Vaccine/Therapeutics Operation to ensure the BOP remains prepared to receive and administer the COVID-19 vaccine as it is made available.  The BOP has received 122,935 doses and administered 111,887 doses of the COVID-19 vaccine as of April 7, 2021.[5]  Defendant does not establish that her current confinement creates an elevated risk of death or serious injury as to COVID-19.

No extraordinary and compelling reasons for a compassionate release are shown by defendant.  Even assuming such reasons were shown, defendant does not merit a compassionate release under 18 U.S.C. § 3142(g) and 18 U.S.C. § 3553(a), as follows.

---

[4]See https://www.bop.gov/coronavirus/  (accessed on April 7, 2021).

[5]See https://www.bop.gov/coronavirus/  "COVID-19 Vaccine Implementation" (accessed on April 2, 2021).

Danger to the Community

Defendant has a lengthy and consistent criminal history going back to her earliest adult years.  (Docket Entry No. 488, p. 20.)  At age 20, she was convicted of burglary, multiple theft and credit card abuse offenses, and making false statements.  At ages 21–26, she accumulated several more convictions involving theft; by age 29, she was convicted in federal court on device fraud charges and sentenced to 21 months' federal imprisonment.  She violated her supervised release in that conviction and was returned to BOP custody for two years.  Id., pp. 21–25.  Her criminal conduct for the instant offenses commenced in 2003.  At the time of her arrest in 2007, she was on state parole. The Texas Department of Criminal Justice issued a detainer as to defendant on February 5, 2008. Id., p. 25.

Defendant has been incarcerated for extensive periods of time during her adult life and has a minimal employment history.  Defendant's longest work history arises from her criminal conduct in the instant convictions.  Id., p. 27.  Defendant has remained in continuous federal detention or custody after her arrest in 2007, and has shown little to no rehabilitation. Her recent misrepresentations to the Court of having the serious congenital blood disorder thalassemia evince her lack of rehabilitation and a continued reliance on fabrications and falsehoods for self-gain.

Defendant has not proffered a plan for re-entry, other than voicing her intent to live with her parents or son who have exercise equipment.  She has no employment in place

and makes unsubstantiated references to "be[ing] employed possibly as a [sic] Internet customer service representative for one of the big-box stores." Id., p. 1. Her future goals appear focused on "be[ing] in a better position to control her weight and not become a full blown diabetic." Id.

The Court finds that defendant would remain a danger to the community if released from incarceration at this time.

Sentencing Factors

The Court discussed above defendant's extensive criminal history and her unabated propensity for criminal behavior, especially theft and fraud-based crimes. Those two factors standing alone weigh heavily against the granting of relief in this case. The Court further notes that defendant was on parole at the time of her arrest, and she committed the instant offenses less than two years after release from her prior imprisonment. Her prior convictions and incarcerations did not deter her from further criminal conduct, and she has shown no indications of rehabilitation or an ability to re-enter society as a law-abiding citizen at this time.

Defendant has served only 37% of the sentence imposed by this Court, and reducing her sentence to time served would not promote respect for the law, provide just punishment, or afford adequate deterrence. See United States v. Thompson, 984 F.3d 431, 2021 WL 37493, at *3 (5th Cir. 2021).

## Conclusion

For these reasons, defendant's motion for compassionate release (Docket Entry No.

1205) is DENIED.

Signed at Houston, Texas, on April__16_____, 2021.

_____

Gray H. Miller
Senior United States District Judge